**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION**

**THOMAS O'BRYANT,**

     **Plaintiff,**

**vs.**                                  **CASE NO. 5:04CV114-SPM/AK**

**JAMES MCDONOUGH, et al,**

     **Defendants.**

_____/

## REPORT AND RECOMMENDATION

Plaintiff filed a complaint pursuant to 42 U.S.C. §1983 alleging that the
Defendants violated his First Amendment rights when they denied his request for
permission to submit a short story manuscript to a publisher.  (Doc. 1).  The case was
stayed pending a ruling as to the constitutionality of Florida Administrative Code §33-
607.207, which prohibited inmates from engaging in business activity.  (Doc. 20).  When
the Court of Appeals for the Eleventh Circuit ruled that the regulation was constitutional
and the DOC had a legitimate penological interest in preventing inmates from receiving
compensation for outside business activities,[1] the undersigned recommended that the
present case be dismissed.  (Doc. 26).

Plaintiff objected to these recommendations contending that his case was
distinguishable from the facts in Prison Legal News because compensation was not at

---

[1] Prison Legal News v. McDonough, Appeal No. 05-14738-DD, District Court
Case No. 3:04cv014-JHM-TEM.

issue in his case.  (Doc.30, pp. 9-10).  The district judge remanded the case to the

undersigned to address this "new" information.  (Doc. 31).

Defendants have moved to dismiss this cause for failure to exhaust

administrative remedies on the ground that Plaintiff never requested to publish the

manuscript without compensation, and thus the issue was not grieved.  (Doc.  56).  This

motion was construed as one for summary judgment because of the evidentiary

materials submitted with the motion, and Plaintiff was advised of his burden in

responding to it.  (Doc. 61).  Plaintiff has responded (docs. 57 and 63).

I.      **Allegations of the Complaint (doc. 1)**

Plaintiff alleges that in April 2000 he submitted a short story to a writing contest

and was subsequently offered a marketing agreement from a literary agent to promote

his writings to publishers.  (Doc. 1, p.7).  The marketing agreement was confiscated and

Plaintiff filed a lawsuit, Case No.  3:01cv74-RH/MD, which went to trial and was

voluntarily dismissed because new regulations were enacted, Rule 33-602.207, Florida

Admin. Code.  Plaintiff then sought permission to submit his short story for publication

pursuant to this new regulation on November 11, 2003, which was denied.

Plaintiff claims that this denial violated his rights under the First Amendment to

express his ideas, thoughts, beliefs and opinions, and his writings do not implicate

legitimate security concerns or legitimate penological interests.

He seeks a declaratory judgment that he has this right, and injunctive relief

preventing Defendants from interfering with this right, and recovery of his costs.

a)      Inmate Request dated November 11, 2003

**No. 5:04cv114-SPM/AK**

Pursuant to Ch. 33-602.207, F.A.C., I'm writing to you to obtain permission to send a short story manuscript, Three Lock Box, to a publisher/literary agent for publication.  Do I have your authorization?

Response: You have provided no information to which I can make a decision.  **Read 33-602.207(2) F.A.C. and familiarize yourself with the criteria by which I have to base my decision on.  If you can make a case for yourself: I will consider**.  (Emphasis added).


   b)      Inmate Request dated November 16, 2003

On 11-11-03 I wrote to you to obtain permission to submit my short story manuscript to a publisher/literary agency for consideration for publication. I'm very familiar with 33-602.207, FAC, and **nowhere in the rule does it require me to "make a case" for myself**.  It only requires me to ask your permission and then you base your decision on the criteria in 33-602.207. Do I have your permission to send my short story manuscript to a publisher/literary agent for possible publication?  It's a fiction manuscript and doesn't pose any legitimate security concerns.  The title of the story is Three Lock Box. (Emphasis added).

Response: **Fine.  Your request is denied**.  (Emphasis added).

   c)      Appeal to Warden dated December 7, 2003

On or about November 20, 2003, I filed an informal grievance that has yet to be answered.  Over 10 days has elapsed without a response being rendered.  Therefore, pursuant to Chapter 33, I'm filing the instant appeal and the informal need not be attached.  On November 18, 2003, Mr. Hamilton denied my request to send my short story manuscript out to a publisher/literary agent for possible publication.  I have a First Amendment right to submit my writings for publication in order to express myself with the general public.  Ch. 33.602.207 and Mr.Hamilton's denial of my request violates this First Amend. right.  I request that Mr. Hamilton's decision be reversed, Ch.33-602.207 be rescinded and that I be allowed to submit my writings for publication.  Thank you.

Response: Your formal grievance has been received and reviewed.  You are advised that after review, this formal grievance is being returned without further processing due to the following as stated in the rules of the Department of Corrections:
33-103.014(g): You have neglected to attach the informal grievance and response as required.


**No. 5:04cv114-SPM/AK**

NOTE: Records indicate a request was received on November 20, 2003, not an informal grievance.

d)      Informal Grievance dated December 23, 2003

On 11-11-03 and 11-16-03 I submitted Inmate Request Forms asking permission to submy m short story manuscript, Three Lock Box, to a publisher/literary agent for publication.  My request was denied.  On or about 11-20-03 I filed an informal grievance concerning this matter.  The informal grievance was not answered, so on 12-8-03 I filed a formal grievance.  On 12-18-03 the formal grievance was returned stating I had not attached a copy of the informal grievance and incorrectly stating that on 11-20-03 I filed a request not a grievance on this matter (ironically, the alleged 11-20-03 "request" could not be produced).  To alleviate any potential confusion I'm refiling the instant informal grievance.  Ch. 33-103.011(1)(a) states that informal grievances must only be filed "within a reasonable amount of time."  The instant grievance, therefore is not untimely.

On November 18, 2005, Mr. Hamilton denied my request to send my short-story manuscript, Three Lock Box, to a publisher/literary agent for possible publication.  I have a First Amendment right to submit my writings for possible publication in order to express myself with the general public.  Ch. 33-602.207, F.A.C., and Mr. Hamilton's denial of my request violates the First Amendment.  I request that Mr. Hamilton's decision be reversed, that 33-602.207 be rescinded, and that I be allowed to submit my writings to publishers/literary agents for publication.

Response: Your informal grievance has been received, reviewed and evaluated.  Your grievance concerning the publishing of a manuscript is denied.  **This decision is based on Chapter 33-602.207, which prohibits inmates from participating in a business or profession that generates revenue or has the potential to generate revenue or profit while the inmate is incarcerated.**  (Emphasis added).

e)      Appeal to Warden dated December 30, 2003

This is an appeal fo the attached grievance.  I have a constitutional right under the First Amendment to express my thoughts with the general public by way of the media.  **Whether or not my expression/manuscript may or may not generate revenue/profit has no relevancy under the First Amendment**.  Ch. 33-602.207, F.A.C., and this institution's refusal to allow me to submit my writings to publishers/editors/literary agents, etc., violates my First Amend. right to free speech.  As the result of this grievance appeal I request that Mr. Hamilton and Mr. Johnson's decision

**No. 5:04cv114-SPM/AK**

be reversed, that 33-602.207 be rescinded, and that D.O.C. stop violating my First Amend. rights by interfering with my attempts to publish my writings.  (Emphasis added).

Response: Your formal grievance has been received and reviewed. You are advised that after review, this formal grievance is being returned without further processing due to the following as stated in the Rules of the Department of Corrections:
33-103.014(n): A decision has already been rendered to an inmate by a particular office on the issue currently being grieved before it.
NOTE: I have reviewed your inmate file and noted that you have filed many grievances in the past regarding your manuscripts.  Decisions have already been made regarding your ability to send manuscripts out for publication.  Grievance numbers 98-300, Walton C.I. dated 12/15/98; 98-037 Walton C.I. dated 1/12/99; Central Office Grievance Coordinators Office, 99-606149 dated 3/23/99; and 00-628531 dated 12/1/00; 008-06-45 Okaloosa CI 10/18/00, and a written decision by General Counsel Attorney Susan Maher, 8/15/00 all supports that negative decision.  As noted, these as well as other grievances have addressed this same issue (all are in part).  Chapter 33-602.207(2) states in part, "...inmates shall not be permitted to circumvent the purpose of this rule (conducting a business while incarcerated) by making repetitive or serial single transaction requests.  Such request shall not be approved by the Warden.

   f)     Appeal to Secretary dated January 14, 2004

This is an appeal of the attached grievance (log #0401-107-009).  The response rendered is incorrect.  I filed the grievances stated in the response prior to Ch. 33-602.207 being developed or enacted.  My request to submit my manuscripts to editors/agents/publishers that I submitted on 11-11-03 and 11-16-03 were pursuant to 33-602-207.  Therefore, the previous grievances are not a determination on this matter. I have a constitutional right to express my views, thoughts, ideas, etc., with the general public whether they are fact or fiction.  This institution's refusal to allow me to do so and 33-602.207 violates that right.  Please reverse the institutions' s decision and rescind 33-602.207.

   Receipt: dated 1/14/04 by staff member.

## II.   Standard of Review

   A district court should grant summary judgment when, "after an adequate time for

discovery, a party fails to make a showing sufficient to establish the existence of an

**No. 5:04cv114-SPM/AK**

essential element of that party's case." <u>Nolen v. Boca Raton Community Hospital, Inc.</u>,

373 F.3d 1151, 1154 (11th Cr. 2004), *citing* <u>Celotex Corporation v. Catrett</u>, 477 U.S. 317,

322 (1986).  All issues of material fact should be resolved in favor of the Plaintiff or non-

moving party before the Court determines the legal question of whether the defendant is

entitled to judgment as a matter of law under that version of the facts.  <u>Durruthy v.</u>

<u>Pastor</u>, 351 F.3d 1080, 1084 (11th Cir. 2003); <u>Skrtich v. Thornton</u>, 280 F.3d 1295, 1299

(11th Cir. 2002).   The Plaintiff has the burden to come forward with evidentiary material

demonstrating a genuine issue of fact for trial.  <u>Celotex</u>, 477 U.S. at 322-23.  Plaintiff

must show more than the existence of a "metaphysical doubt" regarding the material

facts, <u>Matsushita Electric Industrial Co., LTD. v. Zenith Radio Corporation</u>, 475 U.S.

574, 586, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986), and a "scintilla" of evidence is

insufficient.  There must be such evidence that a jury could reasonably return a verdict

for the party bearing the burden of proof.  <u>Anderson v. Liberty Lobby</u>, 477 U.S. 242,

251, 106 S. Ct. 2505, 2512, 91 L. Ed. 2d 202 (1986).  "For factual issues to be

considered genuine, they must have a real basis in the record." <u>Mize v. Jefferson City</u>

<u>Board of Education</u>, 93 F.3d 739, 742 (11th Cir. 1996).

   "Rule 56(e) . . . requires the nonmoving party to go beyond the pleadings and by

his own affidavits, or by the 'depositions, answers to interrogatories, and admissions on

file,' designate 'specific facts showing that there is a genuine issue for trial.' " <u>Owen v.</u>

<u>Wille</u>, 117 F.3d 1235, 1236 (11th Cir. 1997), *cert. denied* 522 U.S. 1126 (1998), *quoting*

<u>Celotex</u>, 477 U.S. at 324, 106 S. Ct. at 2553 (quoting Fed. R. Civ. P. 56(c), (e)).  The

nonmoving party need not produce evidence in a form that would be admissible as Rule

**No. 5:04cv114-SPM/AK**

56(e) permits opposition to a summary judgment motion by any of the kinds of

evidentiary materials listed in Rule 56(c).  Owen v. Wille, 117 F.3d at 1236; Celotex, 477

U.S. at 324, 106 S. Ct. at 2553.

　　　　While a moving party is not required to support his motion for summary judgment

with affidavits, Celotex, supra at 323, the facts stated in uncontradicted affidavits or

other evidentiary materials must be accepted as true for purposes of summary

judgment.  Gauck v. Meleski, 346 F.2d 433, 436 (5th Cir. 1965).

**III.    Defendants' Rule 56(e) evidence**

　　　　The following materials are submitted in addition to the exhaustion evidence

attached to the complaint.

　　　　a)    Letter from Assistant Warden dated June 18, 2004

　　　　As a result of your grievance appeal to Central Office regarding your
　　　　request to mail out manuscripts, the following questions will need your
　　　　response
　　　　1.  How frequently will you need to correspond with the publisher?
　　　　2.  Is there going to be a legal contract involved?
　　　　3.  Is this a one time submission?
　　　　4.  Do you anticipate submitting additional manuscripts?  If you do, how
　　　　much additional correspondence will that generate?

　　　　b)    Inmate Request dated June 21, 2004

　　　　This is in response to your memo to me on 6-18-04 concerning Central
　　　　Office Grievance Appeal #04-602155.  (Institutional Log #0401-107-009).
　　　　1.  How frequently will you need to correspond with the publisher?  Once I
　　　　submit the manuscript one of two scenarios will occur.  (A) If the publisher
　　　　rejects the manuscript for publication, I will receive notice of this and there
　　　　will be no further communications with the publisher; (b) if the publisher
　　　　accepts the manuscript for publication I will receive notification of this and
　　　　will communicate with the publisher approximately 3 to 5 times over the
　　　　following 1 -10 months.

**No. 5:04cv114-SPM/AK**

2.  Is there going to be a legal contract involved?  If the publisher rejects the manuscript, no.  If the publisher accepts the manuscript, yes, but the contract will only concern the terms of an agreement concerning the publication of this particular manuscript.  It will not obligate me to write any more manuscripts for this publisher.

3.  Is this a one time submission?  This is a one time submission of this manuscript to this publisher.

4.  Do you anticipate submitting additional manuscripts?  If you do, how much additional correspondence will that generate?  **This question is irrelevant to this request to submit this manuscript.**  (Emphasis added).

Please be advised, Chapter 33, F.A.C., allows an institution 35 days from the date of an approved grievance at Central Office level to implement the action stated in the approved grievance.  On May 24, 2004, Central Office directed this institution to provide a new response to the grievance.  Therefore, this insttution's response is due Monday June 28, 2004.

Response dated June 26, 2004: **I've asked four questions.  You've answered three.  Answer all questions or get a negative response**.  Don't worry about deadlines-that's my concern.  (Emphasis added).

c)      Inmate Request dated July 1, 2004

This request is in response to the answer you provided on 6/26/04 concerning my wishes to submit my manuscript to publishers.  Ch. 33-602.207 F.A.C. states that while I'm required to seek your approval to submit a manuscript to publishing sources **it doesn't require me to make speculations on possible future events that may or may not ever occur**.  I have requested to send my short story manuscript Three Lock Box to a publisher/editor/agent.  **The question you asked about-additional submissions is irrelevant to this request to submit Three Lock Box for publication.**  (Emphasis added).

Response: See response to Central Office Log #04602155 from Warden Hamilton.

d)      Inmate Request dated July 14, 2002

Most of this request did not scan well, but the gist of it is complaining that he had not

gotten a response from Hamilton and the response was that it was "en route."

**No. 5:04cv114-SPM/AK**

e)      Letter from Warden Hamilton dated July 12, 2004

**You have been given two opportunities to answer four (4) questions. On both occasions, you have failed to respond to one of the questions.  Therefore, your request to mail out your manuscript is denied.**  (Emphasis added).


f)      Appeal to Secretary dated July 23, 2004

On 5-24-04 Central Office approved grievance log #04-6-02155 for further inquiry.  On 7/12/04 the institution again denied my grievance.  I'm now filing the appeal fo the 7-12-04 denial.  **I was asked four questions concerning my wishes to submit my short story to a publisher/agent. One of the questions was completely irrelevant to my request to submit this manuscript on this occasion.**  I have a First Amend. right to submit my writings to the general public by way of media sources, so long as the content of the writing doesn't implicate legitimate security concerns. This institution's refusal to allow me to mail my manuscript to an agent/editor/publisher and 33-602.207, FAC, violates my rights. (Emphasis added).

Response: The institution will be providing you with a response once their review has been completed.


g)      Letter from Warden Hamilton dated September 13, 2004

**Based on the authority given to me in Chapter 33-602.207(2), I have determined the attempt at publication of your manuscript is not in the best interest of Holmes Correctional Institution.  This decision is based on the increased demand on the mail room personnel who will be required to handle and inspect mail documents that are of a business nature rather than a court or personal mail.  In my questions raised to you regarding an anticipation of mailing additional manuscripts you failed to respond**.  You also indicated this was a one time submission but only to the one publisher which suggest you would to publish with others.
The reduction in staffing for mail room personnel has the remaining staff working at capacity.  This requested endeavor could potentially create an unnecessary addition to the work load for the staff responsible for mail delivery.  Therefore, your grievance is denied.  (Emphasis added).


No. 5:04cv114-SPM/AK

h)      Appeal to Secretary dated September 24, 2004

Plaintiff argued that the issue of future submissions was irrelevant and there would be no more burden on the mail staff than if he were sending his manuscript to all his relatives.

> Response: The response you received in the memorandum dated September 13, 2004, from Warden Hamilton has been reviewed is found to appropriately address the concerns that your raised at the institutional level as well as the Central Office level.
> Chapter 33-602.207(2) gives the warden authority to approve or disapprove submissions of manuscripts based on whether the transaction presents a threat to the security, order, or effective management of the institution.  Warden Hamilton indicates that this request could potentially create an unnecessary addition to the work load for the staff responsible for mail delivery.

i)      Appeal to Secretary dated December 10, 2004

Plaintiff complained about the promptness of the previous grievance response and the

Secretary denied the appeal.

j)      Complaint in Case No. 3:01cv74-RH/MD

Plaintiff claims that Defendants at Okaloosa Correctional Institution confiscated

his marketing agreement with Eaton Literary Agency and denied him his First

Amendment right to publish his short story.  Attached are the following grievances:

> Informal grievance dated August 10, 2000: On 8-9-00 you confiscated 2 "marketing contracts" that was sent to me by Eaton Literary Agency.  The purpose of these contracts was so that Eaton Literary Agency may present my manuscripts to a publisher for publication.  You rely on 33-602.401(7), F.A.C. in interfering with my attempt to publish my material.  I have a First Amendment right to send this material to publishers.  Your reliance on this rule is misplaced.  Pursuant to Ch. 120, F.S., DOC must abide by all state and federal regulations and court rulings.  In Procunier v. Martinez, 94 S.Ct. 1800, Abur Jamal v. Price, 154 F.3d 128, and the First Amendment to the U.S. Constitution I have a constitutional right to attempt to publish this.  Your misapplication of the "no business" rule is a flagrant constitutional violation.  I've already addressed this matter in the federal

No. 5:04cv114-SPM/AK

courts once (See O'Bryant v. Moore, Case No. 3:99cv218/RV/SMN).  If you don't refrain from this flagrant disregard for my constitutional rights.

Response: Inmates cannot conduct business through the mail while incarcerated.

Formal Grievance dated September 6, 2000: On 8-10-2000 I filed the attached informal grievance.  I filed an appeal to the superintendent on 8-15-00 (Log #00-8-0645).  Twenty days has lapsed from the filing of the appeal at the institutional level without a response.  Pursuant to Ch. 33 I now file this appeal.  I recently served a §1983 complaint on this same issue (O'Bryant v. Moore, 3:99cv218/RV/SMN).  This matter was also addressed in Grievance Log #98-638101.  The application of a "no business" rule as it applies to writing and the publication of writings is a violation f the First Amendment.  Abu-Jamal v. Price, 154 F.3d 128; Procunier v. Martinez, 416 U.S. at 428.  Furthermore, I wasn't conducting business.  The "marketing contracts' authorized Eaton Literacy Agency to "conduct business" on my behalf.  Eaton Literacy Agency aren't incarcerated and, therefore, Mrs. Harris cannot determine what they can or cannot do for me.  Please resolve this matter before I'm forced to file another §1983 civil rights complaint.

Response: The institution will be providing you with a response once their review has been completed.

Letter dated September 12, 2000, to Plaintiff from Assistant Warden Frysinger advising Plaintiff that a meeting was being held with the legal department and he would be notified shortly of a response.

Appeal to Superintendent dated August 13, 2000: This is an appeal fo the attached grievance.  Mrs. Harris is applying the "no business" rule in a way that's an outright constitutional violation.  I have a First Amendment right to submit my manuscripts for publication by a willing publisher. **Whether or not I happen to receive any form of compensation for them gives them no less constitutional protection**.  I've already addressed this exact same issue in the past and prevailed (see O'Bryant v. Moore, Case No. 3:99cv218-RV/SMN).  Furthermore, I wasn't submitting my material to a publisher.  A literary agency was submitting it on my behalf.  True, "marketing contracts" they sent me to sign only gives them authorization to contract "business" on my behalf.  If there's any "business" being conducted, its by an agency that's not incarcerated within DOC and, therefore, Mrs. Harris has no authority to tell them what they can or can't send to a publisher.  Since Mrs. Harris took it upon herself to call this agency on the phone and incorrectly explain this "no business"

**No. 5:04cv114-SPM/AK**

rule, I request that she call them again to inform them that she was wrong
in her interpretation of this rule.  (Emphasis added).

Response: A request for assistance was forwarded to the Department's
Legal Office.  Susan Maher of the General Counsel's Office notified me
that the meeting I had notified you about would be held it was conducted
and the decision rendered that "you could not receive the contracts."

Appeal to Secretary dated October 22, 2000-This is an appeal of the
attached grievance.  The Dept. Of Corrections is violating my First Amend.
right to free speech.  The "no business" rule cannot be applied in such a
way as to interfere with my rights.  This matter has been addressed in
several federal court case, but for some reason the Fla. DOC seems to
believe that its above the law and can overrule the federal court's
decision.  Please be advised you cannot.  You must abide by them and
you must refrain from violating my rights.  Please cease this illegal
behavior immediately and give me the paperwork that was sent to me.

Response: The response that you received at the institutional level has
been reviewed and is found to appropriately address the concerns that
you raised at the institutional level as well as the Central Office level.

Pretrial Stipulation

The pertinent issue of law before the Court for determination was: "Whether

Plaintiff is entitled to injunctive relief to allow him to contract with outside sources in

order to his written works published **for compensation**." (emphasis added).

Order Denying Motion for Relief From Judgment

The Order reflects that Plaintiff voluntarily dismissed the complaint challenging

the no business rule because the Department adopted a new rule that provided the

warden discretion to allow conduct of the kind at issue.  Fla. Admin. Cod. R. 33-

602.207.  Plaintiff moved for relief from judgment on the ground of fraud, i.e. that the

original rule should be repealed and because it has not, he is still not allowed the

conduct he wishes to engage in, even under the new rule.  The motion was denied, but

No. 5:04cv114-SPM/AK

Plaintiff was advised that his case was dismissed with prejudice so he could file another lawsuit (after full exhaustion) if he wished.

## IV.   Plaintiff's response (docs. 57 and 63)

As the Court held in an Order entered on July 14, 2008, Plaintiff's response would be considered only as it relates to the issue of exhaustion.  (Doc. 67).  Plaintiff has attached to his response (doc. 63) copies of grievances which have already been submitted with previous papers and quoted and discussed above.

Plaintiff also offers a number of transcripts from previous trial proceedings and depositions, which support, for purposes of the issues to be decided, that compensation was clearly at issue in these proceedings[2] and a determinative factor therein.  (See Exhibits R through V, and X through Z.  In addition he submitted the affidavit of Inmate Melvin Perez, who attests that he is a published author who does not receive compensation for his articles.  (Exhibit W).

## V.   Analysis

Recently, the Supreme Court upheld the law of the Eleventh Circuit and reaffirmed that the exhaustion requirement of the Prisoner Litigation Reform Act (PLRA) is mandatory and necessary.  Woodford v. Ngo, 126 S.Ct. 2378, 2382 (2006).  The policies cited by the Court for making exhaustion mandatory are that it provides prisoners with an effective incentive to use the process, which gives the institution a fair opportunity to correct its own errors; and thereby, reduces the number of prisoner suits and improves the quality of the lawsuits that are filed in federal court.  Id., at 2387-2389.

_____

[2]  O'Bryant v. Harris, Case No. 3:01cv74 and  PLN v. Crosby, Case No. 3:04cv14-J-16TEM .

**No. 5:04cv114-SPM/AK**

The Court later addressed the specific issue before this court, which is how much detail is required in a grievance to put the prison officials on notice of the claims and thereby, constitute exhaustion.  Jones v. Bock, 549 U.S. 199, 915 (2007).  The Court held that it is the requirements of each particular prison grievance system that will define the level of detail necessary to constitute proper exhaustion.  Id., at 923.

Examining the system utilized by the FDOC, the requirements are that "the form is legible, that included facts are accurately stated, and that only one issue or complaint is addressed.  Rule 33-103.005.  The expressed purpose of the FDOC grievance procedure is: "to provide an inmate with a channel for the administrative settlement of a grievance...this procedure will assist the department by providing additional means for internal resolution of problems and improving lines of communication..[and] will also provide a written record in the event of subsequent judicial or administrative review." Rule 33-103.001.

Plaintiff argues, essentially, that the Defendants defined the subject matter of his claims when they denied his inmate request without stating a specific reason.  Plaintiff asserts that he brought up the compensation issue only as a means of distinguishing his case from the case decided in Prison Legal News and relied upon by the undersigned, so as to support his objections to the Report and Recommendation.  He further points to the subject matter of the four questions posed to him by the warden, which did not include a question about compensation, and that the prison's basis for denying his request was ultimately grounded on a burden to the mailroom staff.

**No. 5:04cv114-SPM/AK**

The Court has reviewed the long grievance history on this matter and concludes that Plaintiff did not provide sufficient, pertinent information in his grievances to constitute exhaustion.  It was his burden to frame the subject matter of his grievance, not the Defendants, and despite the efforts of the Defendants to get Plaintiff to provide sufficient information to enable them to make a decision on his request to submit the manuscript, of which compensation was a key point, he obstinately refused.

Plaintiff was clearly on notice that compensation was a crucial issue regarding the submission of his manuscript by previous court proceedings, by the warden's reference to Rule 33-602.207(2), and when his informal grievance was denied.  Despite Plaintiff's argument that the information sought was irrelevant and the warden's authority to ask him to "state his best case" baseless, he was referred to the very rule that stated otherwise and with which he said he was very familiar.

Ch. 33-602.207, (as amended in 2008),[3] provides:

(1) No inmate shall establish or engage actively in a business or profession while incarcerated.

(2) For the purposes of this rule, a business or profession is defined as any activity in which the inmate engages with the objective of generating revenue or profit while incarcerated.  Activity so defined is prohibited due to the fact that profit or revenue potential creates the opportunity for fraud and increases inmate interest in participating in business activity, resulting in an increase in the volume of mail and telephone activity.  This increased volume places an undue burden on staff to monitor the additional mail and telephone calls to ensure the security and order of the institution and the safety of staff, inmates and the general public.  Engaging in a business or

---

[3] The current language of this rule was amended after Plaintiff's complaint and may be different than the rule as adopted in 2003.  Neither party has provided the version in use at the time Plaintiff's claims arose, and the Court will assume from the arguments posed by both parties that it was similar enough to the current language as to not be an issue.

**No. 5:04cv114-SPM/AK**

profession also includes individual activities with profit or revenue potential, such as submission of a manuscript for publication when one of the objectives of such publication is the generation of revenue.  Inmates are prohibited from entering into marketing agreements with literary agents for the marketing of literary works in exchange for a portion of any commissions received.  An inmate who wishes to submit writings for publication shall provide a written statement to mailroom staff verifying that the inmate is not seeking compensation, nor will he accept compensation for the writings.

The policies upon which the PLRA and the FDOC grievance procedures are based include as a primary component the means for conflict resolution.  This purpose cannot be achieved if one party or the other refuses to cooperate in the process. Reading through the grievance history of this case, what is most clear is that Plaintiff did not intend to cooperate with the prison administration, so much as to argue with them. Warden Hamilton's first response to Plaintiff's request was simply to ask for more information, as Plaintiff had provided no details about the manuscript or the agent to whom it was to be submitted or the terms of the submission.  If Plaintiff had asserted at that time that he sought no compensation for his manuscript, if he had provided details of what the story was about, to whom he wanted to submit it to, how that process would work, or **any** details, he might have received authorization without filing the first grievance, without involving this Court, and without causing what has ultimately been a very long delay in any resolution of this matter.  If, indeed, Plaintiff's intent was to get his manuscript published, it would seem he would have done his best to facilitate rather than hinder the process by providing as much information as possible, particularly on the issue of compensation since he was acutely aware that this would be a determining factor.

**No. 5:04cv114-SPM/AK**

The Court has over the years read hundreds of grievances, and while it can appreciate that sometimes the grievance process becomes unnecessarily adversarial because of the responding prison officials lack of cooperation and/or tone of condescension, such was not the case here.  Warden Hamilton appeared willing to consider Plaintiff's request so long as he provided some pertinent information, which Plaintiff withheld during the entire grievance process and throughout these proceedings, until his case had been decided against him.  This does not further the basic purpose of the grievance process as stated in the state regulations nor does it constitute exhaustion as required by federal law.

In light of the foregoing, it is respectfully **RECOMMENDED** that Defendants' Motion (doc. 56) be **GRANTED**, and this cause be **DISMISSED** for failure to exhaust administrative remedies pursuant to 42 U.S.C. § 1997(e).

**IN CHAMBERS** at Gainesville, Florida, this   *11th*  Day of August, 2008.

*s/ A. KORNBLUM*
**ALLAN KORNBLUM**
**UNITED STATES MAGISTRATE JUDGE**

<u>**NOTICE TO THE PARTIES**</u>

**A party may file specific, written objections to the proposed findings and recommendations within 15 days after being served with a copy of this report and recommendation.  A party may respond to another party's objections within 10 days after being served with a copy thereof.  Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.**

**No. 5:04cv114-SPM/AK**